# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

Civil Case No.

ANGELA BANEGAS, as an individual and on behalf of all others similarly situated,

    *Plaintiff*,

vs.

THE PROCTER & GAMBLE COMPANY, an Ohio corporation,

    *Defendant*.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ANGELA BANEGAS ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files this Class Action Complaint, and alleges against Defendant, THE PROCTER & GAMBLE COMPANY ("P&G" or "Defendant"), as follows:

## INTRODUCTION

1.      P&G prominently labels, markets and advertises its Pampers baby wipes ("Pampers Wipes" or the "Product") as "natural."  This claim is false, deceptive and likely to mislead a reasonable person because Pampers Wipes contains chemicals that are synthetic, not natural. These chemicals can also cause skin irritation and other problems. Parents seeking natural products for their babies are not receiving the product promised them, but instead are purchasing a misbranded product containing synthetic chemicals. These chemicals include dimethicone, phenoxyethanol, and ethyhexyl glycerin.

2.      The packaging for Pampers Wipes is materially the same for all types of packaging, and appears as follows:



3. Plaintiff relied on P&G's representation that Pampers Wipes are in fact "natural" and that representation was material to her and other Class members' decision to purchase the Product. In fact, "natural" and "clean" are central to the marketing and sale of the Product.

4. Defendant's representation that the Product is "natural" is false, misleading, and likely to deceive reasonable consumers.

5. Plaintiff brings this class action to secure, among other things, damages and equitable relief, declaratory relief, restitution, and damages for a Class of similarly situated nationwide purchasers against P&G, for: (1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*; (2) Breach of Express Warranty; and (3) Unjust Enrichment (alleged in the alternative to Plaintiff's other causes of action).

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over the instant lawsuit pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

7.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the total claims of the individual members of the Class are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, there are in excess of 100 class members and as set forth below, diversity of citizenship exists under CAFA because Plaintiff is a citizen of Florida, and Defendant is an Ohio corporation with its principal place of business located in Ohio.

8.     This Court has personal jurisdiction over P&G because P&G is authorized to conduct business and does conduct business in Florida.  Defendant marketed, promoted, distributed, and sold the Pampers Wipes in Florida, and continues to do so, and has sufficient minimum contacts with this State and/or has sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing, to render the exercise of jurisdiction by this Court permissible.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and transactions occurred in this district, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the Product in this district.

## PARTIES

10.     Plaintiff, ANGELA BANEGAS, is an individual more than 18 years old and is a citizen of Florida, who resides in Broward County, and who purchased Pampers Wipes in Broward County, Florida.

11.     Defendant, THE PROCTER & GAMBLE COMPANY, marketed and sold Pampers Wipes in this jurisdiction and in this Judicial District.  Defendant is an Ohio

corporation, with its principal place of business located in Ohio.

12. The Product's advertising relied upon by Plaintiff was prepared and/or approved by P&G and its agents, and was disseminated by P&G and its agents through advertising containing the misrepresentations alleged herein.

13. P&G is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive advertising for the Product.

## FACTUAL ALLEGATIONS

14. There is a strong consumer demand for the products that are natural and free of artificial and synthetic chemicals. This is especially true of products intended to be used on children and infants, such as the baby wipes that are the subject of this Complaint.

15. P&G exploited this consumer demand when it marketed, labeled and sold its wipes as "natural." And it has succeeded. Pampers Wipes is one of the world's leading baby wipes.

16. However, Pampers Wipes is not natural. The Product contains dimethicone, phenoxyethanol, and ethyhexyl glycerin, which are manufactured chemicals not occurring in nature. Moreover, the Food and Drug Administration has determined that phenoxyethanol can depress the central nervous system and may cause vomiting and diarrhea, which can lead to dehydration in infants. *See* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ 2008/ucm116900.htm. Dimethicone is a synthetic chemical of the silicone family that may cause allergic reactions including rash, itching, swelling and difficulty breathing. It is created using petrochemically-derived methanol, a toxic alcohol. The processing can create environmental hazards such as hydrochloric acid. It may react with other chemicals on the skin

and it has been restricted by the Cosmetic Ingredient Review Assessments Board. Ethylhexyl glycerin is an unnatural chemical preservative. It can irritate the skin and eyes.

17. Pampers Wipes also contains several other unnatural chemicals, such as: disodium EDTA, PEG 40 hydrogenated castor oil, sodium benzoate, and sodium citrate.

18. P&G's "natural" claim, which is uniformly, consistently and prominently displayed on the front of each individual package of its Pampers Wipes, is untrue, misleading, and likely to deceive reasonable consumers, including Plaintiff and members of the Class. Reasonable consumers rely on label representations and information in making purchase decisions.

19. P&G unlawfully markets, advertises, sells, and distributes the Product to nationwide purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores as its being "natural" when it is not.

20. P&G's representation that the Product is "natural" is a material representation because consumers attach importance to "natural" claims when making a purchasing decision, particularly when buying products to use on their babies and children. In fact, the Federal Trade Commission has filed complaints against companies for deceptively advertising their products as natural when the products contain artificial ingredients such as dimethicone and phenoxyethanol.

21. P&G markets and advertises Pampers Wipes as "natural" in order to increase sales. P&G knows that its claim that the Product is "natural" is material to consumers. P&G made the deceptive representations regarding the Product with the intent that purchasers would rely on its representation and to induce Plaintiff's and the other Class members' purchase of the Product.

22. In reliance on the representation that the Product was "natural" Plaintiff and other Class members purchased the Product. Plaintiff and other Class members would not have purchased Pampers Wipes or would not have paid the price charged if not for the representation that the Product was "natural." Plaintiff and other Class members paid for a product that does not have the features it was represented to have.

23. Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

**Plaintiff Angela Banegas**

24. Plaintiff Angela Banegas has purchased Pampers Wipes an estimated 100 times over the last twelve years. She purchased Pampers Wipes in Broward County, Florida, where she resides, from a number of retail stores, including Babies "R" Us, Inc., Target Corp. and BJ's Wholesale Club, Inc.

25. Plaintiff purchased Pampers Wipes to use on her three children, the youngest of which is now 16 months old. Plaintiff uses the wipes on her children's skin, including to wipe their mouth, nose and around their eyes. Plaintiff read the label prior to purchase and bought Pampers Wipes in reliance on P&G's representation that the Product was "natural."

26. If Plaintiff had known that Pampers Wipes is not "natural" but contains synthetic and/or artificial chemicals, she would not have purchased the Product or would not have purchased the Product at the price paid. Plaintiff bought and paid for a product that does not have the features it was represented to have.

27. Plaintiff has been damaged and suffered economic loss by paying for a Product that was not sold as advertised and/or that she would not have purchased if not for the false representation.

**CLASS ACTION ALLEGATIONS**

28.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint as if fully set forth herein.

29.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> All persons who purchased Pampers Wipes other than for purpose of resale.

30.     Excluded from the Class are Defendant, and Defendant's officers, directors, affiliates, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

31.     Based on the annual sales of the Product, members of the Class are so numerous and geographically dispersed that joinder of all Class members is impractical, if not impossible. Plaintiff is informed and believes that the Class contains many tens of thousands of members. The precise number of Class members is unknown to Plaintiff.

32.     Defendant's representations that the Product is "natural" were uniformly made so that the questions of law and fact are common to all members of the Class and predominate over questions affecting only individual Class members.

33.     Questions of law and fact common to the Class exist that predominate over any individual issues, including, *inter alia*:

   a.     Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

   b.     Whether Defendant made express warranties and breached express warranties;

    c.    Whether the Product is "natural";

    d.    Whether the chemicals contained in the Product are "natural";

    e.    Whether the chemicals contained in the Product are unnatural, synthetic or artificial;

    f.    Whether the claim "natural" on the Product's packaging is material to a reasonable consumer;

    g.    Whether the claim "natural" on the Product's packaging and advertising is likely to deceive a reasonable consumer;

    h.    Whether Plaintiff and members of the Class have sustained monetary loss and the proper measure of that loss;

    i.    Whether Plaintiff and members of the Class are entitled to restitution or disgorgement of Defendant's profits and to injunctive relief; and

    j.    Whether Defendant was unjustly enriched by the sale of the Product.

34.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the members of the Class.

35.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.

36.    Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to

protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

38. Further, given the large number of consumers of the Product, having individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications arising from the same set of facts.

39. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

40. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

41. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class, thereby making appropriate the relief sought on behalf of the Class.

## FIRST CAUSE OF ACTION

### (Violations of Florida's Deceptive and Unfair Trade Practices Act)
### (FLA. STAT. §§ 501.201, *et seq.*)

42. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 through 41 as if fully set forth herein.

43. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, Florida Statutes.

44. The express purpose of FDUTPA is to "protect the consuming public . . . from

those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

45. Section 501.204(1), Florida Statutes, declares as unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

46. The sale of the Product was a "consumer transaction" within the scope of FDUTPA.

47. Plaintiff is a "consumer" as defined by Section 501.203, Florida Statutes.

48. Defendant's Product is a good within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of FDUTPA.

49. Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff and members of the Class.

50. Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

51. Specifically, Defendant has represented that the Product is "natural" when, in fact, the Product is made with dimethicone, phenoxyethanol, and ethyhexyl glycerin, which are not natural chemicals.

52. Plaintiff and Class members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they paid money for Defendant's mislabeled Product.

53. Reasonable consumers rely on Defendant to honestly represent the true nature of its ingredients.

54. Defendant has deceived reasonable consumers, like Plaintiff and members of the Class, into believing the Product was something it was not; specifically that the Product is "natural."

55. Pursuant to sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and members of the Class make claims for damages, attorney's fees and costs. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant. Pursuant to section 501.211(1), Florida Statutes, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

56. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty)

57. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 through 41 as if fully set forth herein.

58. Defendant has expressly represented that the Product is "natural" when in fact the Product is made with synthetic and/or artificial chemicals including dimethicone, phenoxyethanol, and ethyhexyl glycerin.

59. The Product is marketed directly to consumers by Defendant, comes in sealed packages, and does not change from the time it leaves Defendant's possession until the Product arrives in stores to be sold to consumers.

60. Plaintiff is informed and believes, and thereon alleges, that Defendant made an express warranty, including that the Product is "natural."

61. Defendant breached its express warranty by claiming that the Product is "natural" because the Product contains synthetic and/or artificial chemicals including dimethicone, phenoxyethanol, and ethyhexyl glycerin.

62. As a proximate result of the failure of the Product to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial, in that they were induced to purchase a product they would not have purchased had they known the true facts about it, and have spent money on a product that was not what it was represented to be and that lacks the value Defendant represented the Product to have.

63. Plaintiff gave timely notice to Defendant of its breach of express warranty individually and on behalf of all members of the Class, by letter sent to Defendant on or about April 22, 2016.

64. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's breach of express warranty.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

65. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 through 41 as if fully set forth herein.

66. In its marketing and advertising, Defendant has made false and misleading statements and/or omissions regarding the Product, as described herein.

67. Defendant has represented that the Product is "natural" when in fact the Product is made with synthetic and/or artificial chemicals including dimethicone, phenoxyethanol, and ethyhexyl glycerin.

68. The Product is marketed directly to consumers by Defendant, comes in sealed packages, and does not change from the time it leaves Defendant's possession until the Product arrives in stores to be sold to consumers.

69. Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Product. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Product to Plaintiff and other Class members.

70. Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

71. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the claims it makes about the Product are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

72. Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

73. Accordingly, Plaintiff and Class members are entitled to restitution in an amount ordered by the court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, appointing Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2. For an award of equitable relief for as follows:

   (a) Awarding declaratory relief and enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the marketing, advertising, or sale of the Product in such manner as set forth in detail above, or from making any claims found to violate FDUTPA or the other causes of action as set forth above;

   (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

   (c) Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

   (d) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3. For actual damages in an amount to be determined at trial;

4. For an award of attorney's fees and costs;

5. For any other relief the Court might deem just, appropriate, or proper; and

6. For an award of pre- and post-judgment interest on any amounts awarded.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: July 7, 2016

/s/ Joseph M. Pustizzi
Joseph M. Pustizzi, Esq.
Fla. Bar No. 70362
**THE LAW OFFICE OF JOSEPH PUSTIZZI, P.A.**
3440 Hollywood Blvd., Suite 415
Hollywood, Florida 33021-6933
Tel: (954) 241-4244

*joseph@pustizzilaw.com*

Michael T. Fraser, Esq.
Fla. Bar No. 87411
**THE FRASER LAW FIRM, P.C.**
4120 Douglas Blvd., Suite 306-262
Granite Bay, California 95746
Tel: (888) 557-5115
Fax: (866) 212-8434
*mfraser@thefraserlawfirm.net*

Timothy G. Blood (pro hac vice to be filed)
Leslie E. Hurst (CA178432)
Jennifer L. MacPherson (CA202021)
**BLOOD HURST & O'REARDON, LLP**
701 B Street, Suite 1700
San Diego, California 92101
Tel: (619) 338-1100
Fax: (619) 338-1100
*tblood@bholaw.com*
*lhurst@bholaw.com*
*jmacpherson@bholaw.com*

*Attorneys for Plaintiff*