IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ANGELA BANEGAS, individually and on
behalf of all others similarly-situated,

    Plaintiff,

v.

                                  Case No. 0:16-cv-61617-DPG

THE PROCTER & GAMBLE COMPANY,
an Ohio corporation

    Defendant.

### DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERATIVE, TO STAY IN FAVOR OF FIRST-FILED ACTION

Pursuant to the first-to-file rule, Defendant The Procter & Gamble Company ("P&G") respectfully moves this Court to transfer venue to the United States District Court for the Central District of California, Santa Ana Division, where an overlapping matter has been pending since June 13, 2016, or to stay this action pending the resolution of that matter in the Central District of California. *See* Def.'s Notice of Pending Related Actions (ECF No. 16).

### I.    INTRODUCTION

P&G is a pioneer in the field of baby care, having introduced disposable diapers to the mass market sixty years ago with the launch of the Pampers brand. Since then, the Pampers brand has become synonymous with innovation and quality. In June 2012, P&G introduced the "Natural Clean" product line to the Pampers brand. In the absence of an accepted definition for "natural" in cosmetics, the product attributes associated with the Natural Clean wipes explain the meaning of "Natural Clean" and are featured prominently on the primary display panel: *unscented with a touch of aloe*; *non parfumées et contiennent un soupçon d'aloès*; *sin fragrancia con un toque de aloe.* Compl. ¶ 2 (ECF No. 1) (reproducing the primary display panel).

The packaging for the Natural Clean wipes contains no reference to "natural," save for the product name, and there are no allegations that the wipes are described as "all natural," "100% natural," or that the wipes otherwise claim to contain no artificial or synthetic ingredients. The Food & Drug Administration ("FDA") has not offered a definition of "natural," although the FDA has solicited comments on defining "natural" in food labeling. Further, consistent with comprehensive FDA regulations governing cosmetics, including baby wipes, the entire list of product ingredients is prominently displayed on the product packaging in descending order of importance.

Despite these clear qualifiers on both the front and back of the product packaging, which explain and define the product attributes of the Natural Clean wipes, Plaintiff Angela Banegas ("Banegas") attempts to convert the trade name "Natural Clean" into an affirmative, unqualified representation that the product is "all natural," "100% natural," or the like, and then posits her own idiosyncratic definition of what "natural" should mean. Banegas has brought three causes of action on behalf of a nationwide class: (1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) breach of express warranty; and (3) unjust enrichment.

Banegas' allegations and claims overlap with and are substantially related to those asserted in a putative class action currently pending in the United States District Court for the Central District of California, Santa Ana Division, *Brenner v. The Procter & Gamble Company*, No. 8:16-cv-1093 (C.D. Cal.). In that case, Plaintiff Veronica Brenner ("Brenner") similarly asserts violation of California's respective consumer protection statutes (*i.e.,* (1) Unfair and Deceptive Acts and Practices in violation of the California Consumers Legal Remedies Act; (2) California's False Advertising Law; and (3) California's Unfair Competition Law); (4) unjust enrichment; and (5) breach of express warranty. Brenner also seeks to represent a nationwide

class.  As alleged in both complaints, Brenner is a member of Banegas' putative class, and Banegas is a member of Brenner's putative class.  Due to the overlapping nature of the issues involved in these two cases, Banegas' case—as the second-filed action—should be transferred to the United States District Court for the Central District of California, Santa Ana Division, where first-filed *Brenner* is pending, or this Court should stay this proceeding until *Brenner* is finally resolved, in order to avoid duplicative proceedings, inconsistent judicial findings, and unnecessary litigation costs, as well as in order to conserve judicial resources.

## II.   FACTUAL BACKGROUND

Banegas filed her Complaint on July 7, 2016.  As alleged in the Complaint, Banegas purchased the Natural Clean wipes from "a number of retail stores, including Babies 'R' Us, Inc., Target Corp. and BJ's Wholesale Club, Inc."  Compl. ¶ 24.  Banegas contends that she understood "Natural Clean" to mean that the Natural Clean wipes did not "contain[] synthetic and/or artificial chemicals."  *Id*. ¶ 26.  Banegas seeks to represent a nationwide class of "all persons in the United States who purchased Pampers Wipes [*i.e.,* the Natural Clean wipes] other than for purpose of resale."  *Id.* ¶ 29.  Banegas brings three causes of action: (1) FDUTPA; (2) breach of express warranty; and (3) unjust enrichment.

On June 13, 2016, almost a month before Banegas filed her Complaint, Brenner filed a substantively identical complaint in the Central District of California.  As alleged in the *Brenner* complaint, Brenner purchased the Natural Clean wipes from a Target store.  Complaint at ¶ 13, *Brenner v. The Procter & Gamble Company*, No. 8:16-cv-1093 (C.D. Cal. June 13, 2016) (attached as Exhibit 1).  Brenner contends that she understood "Natural Clean" to "mean that the Wipes did not contain synthetic chemicals and, at the very least, would not contain chemicals which were potentially harmful to her child."  *Id.*  Brenner seeks to represent a nationwide class

3

of "all persons in the United States who purchased Pampers 'natural clean' Wipes," excluding those "persons who made such purchases for purpose of resale." *Id.* ¶ 16.  Brenner brings five causes of action: violation of California's consumer protection statutes (*i.e.,* (1) the California Consumers Legal Remedies Act; (2) California's False Advertising Law; and (3) California's Unfair Competition Law); (4) unjust enrichment; and (5) breach of express warranty.

### III. LEGAL ARGUMENT

"[U]nder the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Ingram-Fleming v. Lowe's Home Ctr., LLC*, No. 8:14-cv-2569, 2015 WL 456509, at *2 (M.D. Fla. Feb. 3, 2015) (quoting *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012)); *accord Strother v. Hylas Yachts, Inc.*, No. 12-cv-80283, 2012 WL 4531357, at *1 (S.D. Fla. Oct. 1, 2012).  P&G asks this Court to either transfer or stay this action in favor of the first-filed *Brenner* action.

### A. The Court Should Transfer This Action to the Central District of California Pursuant to the First-to-File Rule.

A nationwide class action lawsuit involving issues identical to those asserted by Banegas in the instant case was filed in the United States District Court for the Central District of California before Banegas filed her Complaint here; therefore, this case should be transferred pursuant to the first-to-file rule.  The Eleventh Circuit has recognized the first-filed rule as "well established." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).  "The Eleventh Circuit follows the first-to-file rule, and, '[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit.'" *Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1298-99 (S.D. Fla. 2013) (quoting *Manuel*, 430 F.3d at 1135).  "When the rule applies, 'the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine

4

which case should, in the interests of sound judicial administration and judicial economy, proceed.'" *Id.* at 1299 (alterations in original) (quoting *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012)); *accord Rudolph & Me, Inc. v. Ornament Cent., LLC.*, No. 8:11-cv-670, 2011 WL 3919711, at *3 (M.D. Fla. Sept. 7, 2011); *Marietta Drapery & Window Coverings, Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1370 (N.D. Ga. 2007).

"In making its determination [regarding whether the first-to-file rule applies], the Court looks to the following factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Rudolph & Me*, 2011 WL 3919711, at *1; *accord Laskaris*, 962 F. Supp. 2d at 1299; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beta Constr. LLC*, No. 8:10-cv-1541, 2010 WL 3789042, at *3 (M.D. Fla. Sept. 24, 2010). In this case, all of the factors weigh in favor of application of the rule.

### 1. The *Brenner* Complaint Was Filed Before the *Banegas* Complaint.

The chronology of the two actions is clear. The *Brenner* complaint was filed June 13, 2016, whereas the *Banegas* complaint was filed on July 7, 2016. Thus, this factor weighs in favor of application of the first-to-file rule. *See Strother*, 2012 WL 4531357, at *2 (holding that, because an action was filed in the District of Massachusetts 58 minutes before a comparable action was filed in the Southern District of Florida, "the Massachusetts action is the first-filed suit and is therefore entitled to a strong presumption favoring that forum").

### 2. The Parties Are Substantially Similar.

The similarities of the parties in the two cases also weigh in favor of application of the first-to-file rule. To meet the "similarity of the parties" prong, "a precise identity of the parties is not required." *Rudolph & Me, Inc.*, 2011 WL 3919711, at *2. Where two plaintiffs bring separate putative class actions against the same defendant, courts routinely find that there is a

5

similarity between the parties, given that, "in the context of class action lawsuits . . . it is the class, not the class representatives, that are relevant for purposes of the first-to-file rule." *Peterson v. Aaron's, Inc.*, No. 1:14-cv-1919, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) (alteration in original) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-cv-3517, 2011 WL 1399441, at *4 (N.D. Cal. Apr. 13, 2011)); *see also Ingram-Fleming*, 2015 WL 456509, at *1-2 (applying first-to-file rule in context of a putative class action); *Laskaris*, 962 F. Supp. 2d at 1299 (same); *Perkins v. Am. Nat'l Ins. Co.*, 446 F. Supp. 2d 1350, 1353-54 (M.D. Ga. 2006) (same).

Here, the *Brenner* and *Banegas* plaintiffs and defendants are sufficiently similar to weigh in favor of applying the first-to-file rule. First, the defendant in *Brenner* is the identical defendant here. Both actions involve one named plaintiff suing one defendant (P&G) on behalf of a proposed nationwide class.

Second, while the named plaintiffs are different, the proposed nationwide class in *Brenner* encompasses Banegas and her proposed class, and vice versa. Brenner "seeks to represent a class defined as all persons in the United States who purchased Pampers 'natural clean' wipes," excluding "persons who made such purchases for purpose of resale." Ex. 1, *Brenner* Complaint at ¶ 16. Banegas seeks to represent a class defined as "[a]ll persons who purchased Pampers Wipes [*i.e.,* the natural clean wipes] other than for purpose of resale." Compl. ¶ 29. Thus, Brenner is included in the *Banegas* class, and Banegas is included in the *Brenner* class. Accordingly, the parties are substantially similar.

### 3. The Cases Involve Identical Issues.

The similarity of the issues in *Brenner* and *Banegas* also weighs in favor of dismissal. "Mirror image" complaints are not required; rather, "what is required is a similarity or an

6

overlapping subject matter." *Rudolph & Me*, 2011 WL 3919711, at *3 (citing *Manuel*, 430 F.3d at 1135); *accord Strother*, 2012 WL 4531357, at *2; *see also Peterson*, 2015 WL 224750, at *3 (applying the first-to-file rule because two suits were "largely based on the same alleged conduct," notwithstanding plaintiff's contention that "the *Byrd* plaintiffs are pursuing a claim under the Federal Electronic Communications Privacy Act, whereas they are simply asserting claims under Georgia law"); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (E.D. Pa. 2013) ("Because one of the cases involves claims that are not asserted in the other does not necessarily preclude application of the first-filed rule where the core facts are similar and the causes of action in both arise out of the same . . . relationship and conduct.").

The factual subject matter involved in *Banegas* is identical to that in *Brenner*. Both cases are brought against P&G and revolve around the named plaintiffs' purchases of Pampers Natural Clean wipes. Both cases are brought on behalf of putative nationwide classes. Both cases allege identical claims for unjust enrichment and breach of express warranty. Both plaintiffs seek to bring violations of California and Florida's respective consumer protection statutes relating to whether the wipes are falsely advertised as "natural clean" when they allegedly contain synthetic chemicals. *Compare* Ex. 1, *Brenner* Complaint at ¶ 13 ("Plaintiff understood this representation to mean that the Wipes did not contain synthetic chemicals . . . ."), *with* Compl. ¶ 26 ("If Plaintiff had known that Pampers Wipes is not 'natural' but contains synthetic and/or artificial chemicals, she would not have purchased the Product or would not have purchased the Product at the price paid."). Accordingly, the similarity of the issues in these two putative nationwide class actions against P&G weighs in favor of application of the first-to-file rule.

\* \* \*

Because *Brenner* was filed before the instant case and *Brenner* involves parties and claims against P&G clearly overlapping with and substantially similar to those presented by Banegas on behalf of herself and her proposed nationwide class, the first-to-file rule applies. There are no compelling circumstances that would justify ignoring the rule.  Pursuant to the first-to-file rule, the case should be transferred to the district and division of the first-filed case—the Central District of California, Santa Ana Division.  *See Peterson*, 2015 WL 224750, at *2; *Ingram-Fleming*, 2015 WL 456509, at *1-2; *Laskaris*, 962 F. Supp. 2d at 1299; *Perkins*, 446 F. Supp. 2d at 1353-54; *Martin v. S.C. Bank*, 811 F. Supp. 679, 686 (M.D. Ga. 1992) ("Therefore, the Court chooses to apply the first-to-file rule in the instant action because it would be a monumental waste of judicial resources for this Court to consider the same issues that are pending in the Alabama court and inconsistent judgments might result from its retention of this case.").

**B.     Alternatively, the Court Should Stay This Action Pending a Final Resolution of the First-Filed *Brenner* Case.**

In the alternative, the Court should stay this action pending resolution of the first-filed *Brenner* case in the Central District of California.  According to the first-filed rule, when the parties and issues in two suits pending in separate federal courts are substantially the same, the court in which the case was first filed should hear the case.  *See Manuel*, 430 F.3d at 1135 (observing that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").  While the Court may transfer this action to the first-filed forum for the reasons described above, the Court also has discretion to stay this case until the first-filed action is resolved.  *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551-52 (11th Cir. 1986) ("Trial courts are afforded broad discretion in determining

8

whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court.").

Here, if the Court declines to transfer this action to the Central District of California where substantially similar claims are pending in the *Brenner* case, P&G respectfully submits that the Court should issue a stay in this case to allow the first-filed *Brenner* court to be resolved, in order to avoid the risk of inconsistent judicial findings, unnecessary litigation costs, and to conserve judicial resources. *McLeod v. Maidenform Brands, Inc.*, No. 4:13-cv-661, 2014 WL 644633, at *1 (N.D. Fla. Feb. 19, 2014) (staying all proceedings in second-filed action pending outcome in first-filed case); *Innovative Patented Tech., LLC v. Samsung Elecs. Co., Ltd.*, No. 07-cv-81148, 2008 WL 2726914, at *1-2 (S.D. Fla. July 10, 2008) (granting motion to stay pending outcome in a related proceeding first-filed in another forum); *Leviton Mfg. Co. v. Interline Brands, Inc.*, No. 3:05-cv-123, 2006 WL 2523137 at *3 (M.D. Fla. Aug. 30, 2006) (granting stay without condition pending final judgment in first-filed actions). Given the overlapping nature of the putative classes and claims in the *Brenner* case and this case, the same legal issues are presented for resolution in both matters. The Court should conserve its own resources, as well as the resources of the parties, by staying all proceedings in this action.

## IV.   CONCLUSION

For the reasons above, the Court should transfer this case to the Central District of California or, alternatively, stay this proceeding pending the resolution of *Brenner*.

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: August 25, 2016

Respectfully submitted,

By: __/s/Douglas C. Dreier_____
Samuel A Danon (Florida Bar No. 892671)
Douglas C. Dreier (Florida Bar No. 104985)
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Email: sdanon@hunton.com
Email: ddreier@hunton.com

Ann Marie Mortimer (*pro hac vice*)
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Telephone: (213) 532-2000
Facsimile: (213) 532-2020
Email: amortimer@hunton.com

*Counsel for Defendant The Procter & Gamble Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 25, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which effected service on counsel of record for Plaintiff Angela Banegas.

| | |
|---|---|
| **Law Office of Joseph Pustizzi, P.A.**<br>Joseph M. Pustizzi<br>3440 Hollywood Blvd., Suite 415<br>Hollywood, FL 33021<br>Telephone: (954) 241-4244<br>E-mail: *joseph@pustizzilaw.com* | **The Fraser Law Firm, P.C.**<br>Michael T. Fraser, Esq.<br>4120 Douglas Blvd, Suite 306-262<br>Granite Bay, CA 95746<br>Telephone: (888) 557-5115<br>Facsimile: (866) 212-8434<br>E-mail: *mfraser@thefraserlawfirm.net* |

**BLOOD HURST& O'REARDON, LLP**
Timothy G. Blood
Leslie E. Hurst
Jennifer L. McPherson
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619)338-1100
E-mail: *tblood@bholaw.com*
E-mail: *lhurst@bholaw.com*
E-mail: *jmacpherson@bholaw.com*

                                                  /s/  Douglas C. Dreier
                                                    Douglas C. Dreier