**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Civil Case No. 0:16-cv-61617-GAYLES/TURNOFF

| | |
|---|---|
| ANGELA BANEGAS, as an individual and on behalf of all others similarly situated,    *Plaintiff*,  vs.  THE PROCTER & GAMBLE COMPANY, an Ohio corporation,    *Defendant*. | **CLASS ACTION**   **JURY TRIAL DEMANDED** |

**PLAINTIFF ANGELA BANEGAS' RESPONSE TO MOTION TO
TRANSFER OR STAY, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ANGELA BANEGAS ("Banegas"), individually and on behalf of all others similarly situated, hereby responds to Defendant, THE PROCTER & GAMBLE COMPANY's, ("P&G" or "Defendant") Motion to Transfer or, in the Alternative, to Stay in Favor of the First-Filed Action [E.C.F. No. 17] and states:

## I. INTRODUCTION

Invoking the "first-filed rule," P&G asserts transfer of this case to California is mandatory. It is neither mandatory nor warranted. In circumstances where pre-filing settlement discussions occurred, where there is bad faith conduct or forum shopping, or where the filing time between the cases is short, the first-filed rule is not applied.

P&G's motion should be denied for what it is – a blatant attempt to play one court against the other. P&G doesn't tell this Court that just one month ago it also moved to stay the *Brenner* action pending resolution by the Ninth Circuit of two appeals in unrelated cases. Now, it asks this Court to transfer *Banegas* to California so that it can tie it up with *Brenner* and stay both cases while unrelated appeals wind their way through the notoriously slow Ninth Circuit. No one knows how long this will take, but the longer the better for P&G.

Moreover, P&G did not mention that it has been aware of and working on the *Banegas* case well before *Brenner* was filed. Prior to filing her complaint, Banegas sent a draft of her complaint along with a pre-suit demand to P&G. P&G and Banegas then engaged in settlement discussions over seven weeks in the hope a resolution could be reached. The California *Brenner* case was filed first (by just 24 days) only because Banegas believed P&G's willingness to discuss settlement was in good faith. In addition, P&G's motion ignores the balance of convenience inquiry under 28 U.S.C. §1404(a), no doubt because this favors keeping this case in Florida.

1

Staying or transferring this case to California, as P&G would have this Court do, accomplishes the exact opposite of what the first-filed rule is designed to prevent: it wastes the resources of the court and the parties and discourages future plaintiffs from seeking to resolve matters amicably for fear that they might lose a race to the courthouse.

## II.   ARGUMENT

### A.   The First-Filed Rule Does Not Apply

Under the "first-filed rule" where two actions involving overlapping issues and parties are pending in two federal courts, there is a presumption that generally favors the forum of the first-filed suit. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). The purpose of this rule is to preserve judicial resources and avoid inconsistent rulings. *In re Checking Account Overdraft Litig.*, 859 F. Supp.2d 1313, 1324 (S.D. Fla. 2012).

The rule, however, is not mechanically applied and the presumption may be overcome by a showing that circumstances warrant an exception. *Manuel*, 430 F.3d at 1134-35. If circumstances are such that justice would be better served by allowing the second-filed case to proceed, the district court has discretion to dispense with the first-filed rule. *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).

The court should consider all equitable factors in deciding the applicability of the first-filed rule, often looking to the same factors used to evaluate motions to transfer venue pursuant to 28 U.S.C. §1404(a). *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 79-80 (11th Cir. 2013); *see also Manuel*, 430 F. 3d. at 1135 n.1. Among those factors are: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative

2

means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *Manuel*, 430 F.3d at 1135 n.1.

Other considerations also justify departure from the first-filed rule, including inequitable conduct, bad faith and forum shopping.  *Manuel*, 430 F.3d at 1136-37; *Chaban Wellness LLC v. Sundesa, LLC*, No. 15-cv-21497, 2015 U.S. Dist. LEXIS 97511, at *6 (S.D. Fla. July 27, 2015). Courts also consider the length of time between the first-filed and second-filed cases.  *Hanson PLC v. Metro-Goldwyn-Mayer, Inc.*, 932 F. Supp. 104, 107 (S.D.N.Y. 1996).  Indeed, the first-filed rule "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping.  District courts have always had discretion to retain jurisdiction given appropriate circumstances . . . ." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988).

Compelling circumstances justify a departure from wooden application of the first-filed rule in this case.

### 1. P&G Is Gaming the System

Along with a motion to dismiss, on August 11, 2016, P&G moved to stay the *Brenner* action pending the Ninth Circuit's resolution of two cases: *Brazil v. Dole Packaged Foods, LLC*, No. 14-17480 (9th Cir.), and, *Kosta v. Del Monte Foods, Inc.*, No. 15-16974 (9th Cir.).  *See* Declaration of Joseph M. Pustizzi in Support of Plaintiff Angela Banegas' Response to Motion to Transfer or Stay ("Pustizzi Decl.") at ¶10 and Ex. A attached thereto.

According to P&G, "[b]oth parties would benefit from a stay because the Ninth Circuit is likely to provide substantial guidance – and potentially new law – when it rules on *Brazil* and *Kosta*." Ex. A at 36:15-21.  P&G also predicts hardship if the stay of the California *Brenner*

3

action is not granted because "[i]f this litigation were to proceed prior to the resolution of those appeals, both parties would expend significant time and resources pursuing discovery under potentially the wrong legal framework." *Id*. at 35:22-36:5. P&G claims staying *Brenner* would "promote the orderly course of justice." *Id*. at 36:6-9. How long the California *Brenner* case could be stayed, no one knows. While P&G claims decisions on the two appeals are imminent, it acknowledges that briefing in *Kost* was only recently completed on May 25, 2016, and no oral argument has been set by the Ninth Circuit (which is busy and notoriously slow). *Id*. at 34:2-5. P&G points to no Florida cases on appeal that will affect litigation in this district.

P&G provides none of these facts to this Court in its motion to transfer *Banegas* to *Brenner*'s venue in California. Once *Banegas* is in California, P&G will no doubt also seek to stay this case pending resolution of appeals in unrelated cases by the Ninth Circuit. The first-filed rule does not apply where there is gamesmanship and forum shopping. *Manual*, 430 F.3d at 1136-37.

The Court should also consider that even if *Brenner* is not stayed by the California court, P&G vehemently argues *Brenner* must be dismissed because of fatal flaws with the class representative. P&G contends that the *Brenner* plaintiff lacks Article III standing because she is a serial class action plaintiff who made identical claims in two previous lawsuits concerning the designation of baby wipes as "natural" before she ever purchased P&G's baby wipes. Ex. A at 13:15-26. Under these circumstances, it would be inequitable to transfer this suit to a California court predicated upon the existence of a California suit that P&G credibly asserts must be dismissed for the plaintiff's lack of standing. The net effect would be to leave *Banegas*, which pleads claims based on Florida law, in front of a California judge as the only pending lawsuit.

4

### 2. "First-to-File" Does Not Apply Where the Parties Engaged in Active Settlement Discussions that Delayed Banegas Filing Suit

P&G also does not tell the Court that counsel for Ms. Banegas and P&G were involved in substantive settlement discussions during the seven weeks preceding her filing a complaint.

On April 22, 2016, well before actually filing her complaint, Banegas sent P&G a draft of her complaint and a notice informing P&G of impending litigation. Pustizzi Decl. at ¶3. P&G responded on May 12, 2016. It refuted plaintiff's allegations but suggested the parties discuss resolving plaintiff's individual claims to avoid the expense and uncertainty of litigation. *Id*. at ¶5.

For the next seven weeks, counsel engaged in settlement discussions, participating in approximately four telephonic conferences, and exchanging about a dozen emails. *Id*. at ¶6. The conversations evolved to include discussion regarding settlement of the class claims. *Id*. Even after the *Brenner* complaint was filed in California on June 13, 2016, Banegas and P&G continued to talk settlement until shortly before Banegas filed her complaint. *Id*. at ¶7. Though ultimately unsuccessful, the negotiations provided Banegas an opportunity to rework her complaint and to file a narrowed complaint that may preempt a motion to dismiss. *Id*. at ¶8.

Plaintiff's letter and draft complaint sent to P&G on April 22, 2016, predates the *Brenner* complaint by over six weeks. This letter was a condition precedent to plaintiff's complaint. *Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363 (S.D. Fla. 2011). In such circumstance, the Court may view the filing of the *Banegas* complaint as a continuation of the legal process that was underway in advance of the California *Brenner* action. *See*, *e.g.*, *EEOC*, 850 F.2d at 972, where the Third Circuit affirmed the district court's decision to ***not*** apply the first-filed rule because the EEOC had engaged in the legal process and served an investigatory subpoena on defendant before the first case was filed.

5

Banegas' settlement discussions that delayed her filing the complaint should be viewed the same. Courts encourage litigants to amicably resolve their disputes before resorting to judicial intervention. *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). To apply the first-filed rule under these circumstances would effectively discourage parties from attempting pre-suit negotiations, and encourage litigants to race to the courthouse. *Riviera Trading Corp. v. Oakley, Inc*., 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) (recognizing that exceptions to the first-filed rule include a defendant's good-faith attempts at settlement, judicial economy, a minimal time difference between the filing of two competing actions, and a lack of progress in either litigation). If anything, P&G should be seeking transfer of *Brenner* to this Court.

### B.     The Balance of Convenience Favors Litigation in This District

The first-filed rule does not supersede the 28 U.S.C. §1404(a) discretionary balance of convenience inquiry and these factors clearly favor litigation in this district. This is particularly true where, as here, the competing actions were filed within a short time of each other. *See Hanson*, 932 F. Supp. at 107 (first-filed rule holds less sway when the suits are filed extremely close in time); *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc*., No. 06-2551-CM, 2007 U.S. Dist. LEXIS 60867, at *9 (D. Kan. Aug. 17, 2007) (disregarding rule where first suit was filed only seven weeks before the second suit); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc*., 20 F. Supp. 2d 948, 954-55 (E.D. Va. 1998) (ordering transfer to second court when second action filed only two weeks after first action).

In addition to the reasons set forth above, the convenience of the parties and witnesses and the interest of justice support litigating this action in Florida. P&G is an Ohio corporation with its headquarters and principal place of business in Cincinnati. Decisions regarding product

6

marketing, which are central to plaintiff's claims, were likely made in Ohio. P&G officers and employees with knowledge of relevant facts and discoverable evidence will be located in Ohio. P&G has given no indication otherwise and, in fact, made these same arguments to support a motion to transfer to Ohio in other cases. *See*, *e.g.*, *Rikos v. P&G*, No. 10cv1974 BEN (CAB), 2011 U.S. Dist. LEXIS 40374, at *3-6 (S.D. Cal. Apr. 13, 2011) (P&G moved to transfer litigation to Ohio because that is where it is headquartered, where decisions regarding product marketing were made, and where the majority of employee witnesses reside); *Lever Bros. Co. v. P&G*, 23 F. Supp. 2d 208, 210 (D. Conn. 1998) (P&G argued Ohio was the more convenient forum for the parties, the material witnesses, and the production of documents). Because Ohio is significantly closer to Florida than California it is more convenient and less costly for key P&G employees and witnesses (willing and unwilling) to travel to Florida. Additionally, Florida is more convenient for Banegas in the event her counsel need to take depositions or review evidence located in Ohio.

Further, both *Banegas* and *Brenner* are in the early stages of litigation. P&G has not answered either complaint. Moreover, the Court's familiarity with the governing law favors Florida where Banegas brings a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§501.201, *et seq*. Given the interests of justice and based on the totality of the circumstances, litigating in Florida is favorable.

  **C. A Stay Is Not Warranted**

In the alternative, P&G moves to stay *Banegas* pending completion of *Brenner* in California. This case should not be stayed.

///

///

The moving party bears the burden of demonstrating that a stay is appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-56 (U.S. 1936). Courts examine several factors when determining whether to issue a stay: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *eCOMSYSTEMS, Inc. v. Shared Mktg. Serv., Inc.*, No. 8:10-cv-1531-T-33AEP, 2011 U.S. Dist. LEXIS 10174, at *4-5 (M.D. Fla. Jan. 26, 2011); *see also Roblor Mktg. Grp. Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1346-47 (S.D. Fla. 2008).

Staying this case pending resolution of *Brenner* will severely prejudice plaintiff by subjecting her to the inequity of an indefinite stay. Making Banegas and the putative class sit idly by until *Brenner* gets resolved, which may include waiting for the Ninth Circuit to resolve two appeals which will not be controlling law in Florida, will prejudice Banegas and the class she seeks to represent. The only one to benefit will be P&G, who will continue to profit by selling its Pampers baby wipes with the allegedly false claim they are "natural," when in actuality, the baby wipes are made with synthetic chemicals (dimethicone, phenoxyethanol, and ethyhexyl glycerin) that can cause skin irritation and other problems.

P&G's obvious purpose is to avoid litigating this case anywhere. Its attempt to play the courts against each other should be denied. Staying this action will not simplify the issues or streamline trial, nor will it reduce the burden of litigation on the parties or the Court. Instead, it will increase the burden causing critical delay and unnecessary briefing. The motion to stay should be denied.

///

///

### III.   CONCLUSION

For the reasons set forth above, P&G's motion to transfer or stay should be denied.

Respectfully submitted,

Dated: September 8, 2016

*s/ Joseph M. Pustizzi*
Joseph M. Pustizzi, Esq.
Fla. Bar No. 70362
**THE LAW OFFICE OF JOSEPH PUSTIZZI, P.A.**
3440 Hollywood Blvd., Suite 415
Hollywood, Florida 33021-6933
Tel: (954) 241-4244
*joseph@pustizzilaw.com*

Michael T. Fraser, Esq.
Fla. Bar No. 87411
**THE FRASER LAW FIRM, P.C.**
4120 Douglas Blvd., Suite 306-262
Granite Bay, California 95746
Tel: (888) 557-5115
Fax: (866) 212-8434
*mfraser@thefraserlawfirm.net*

Timothy G. Blood (*pro hac vice*)
Leslie E. Hurst (*pro hac vice*)
Jennifer L. MacPherson (CA202021)
**BLOOD HURST & O'REARDON, LLP**
701 B Street, Suite 1700
San Diego, California 92101
Tel: (619) 338-1100
Fax: (619) 338-1100
*tblood@bholaw.com*
*lhurst@bholaw.com*
*jmacpherson@bholaw.com*

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, which effected service on the following counsel of record for Defendant The Proctor & Gamble Company.

| *Attorneys for Defendant The Proctor & Gamble Company* ||
|---|---|
| Samuel A. Danon Fla. Bar No. 892671<br>Douglas C. Dreier (Fla. Bar No. 104985)<br>**HUNTON & WILLIAMS LLP**<br>1111 Brickell Avenue, Suite 2500<br>Miami, FL  33131<br>Tel: (305) 810-2500<br>Fax: (305) 810-2460<br>sdanon@hunton.com<br>ddreier@hunton.com | Ann Marie Mortimer (*pro hac vice pending*)<br>**HUNTON & WILLIAMS LLP**<br>550 South Hope Street, Suite 2000<br>Los Angeles, CA  90071<br>Tel: (213) 532-2000<br>Fax: (213) 532-2020<br>amortimer@hunton.com |

*s/ Joseph M. Pustizzi*
Joseph M. Pustizzi

Civil Case No. 0:16-cv-61617-GAYLES/TURNOFF

10