IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ANGELA BANEGAS, individually and on
behalf of all others similarly-situated,

      Plaintiff,

                                              **Case No. 0:16-cv-61617-DPG**

v.

THE PROCTER & GAMBLE COMPANY,
an Ohio corporation

      Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER OR, IN THE ALTERATIVE, TO STAY IN FAVOR OF FIRST-FILED ACTION**

Plaintiff Angela Banegas ("Banegas"), in her Response (ECF No. 20) to Defendant The Procter & Gamble Company ("P&G")'s Motion for Extension of Time (ECF No. 18), argued that the first-to-file rule should not apply "because, among other reasons, the parties cannot be 'similar' to one another."[1]  (ECF No. 20, at 2.)  Banegas now abandons this argument, realizing that this case plainly meets each of the three elements for the first-to-file rule—*i.e.,* (1) *Brenner v. The Procter & Gamble Company*, No. 8:16-cv-1093 (C.D. Cal.) was filed before this action; (2) the parties are substantially similar; and (3) the cases involve similar or overlapping subject matter.  Unable to contest these elements, Banegas instead pleas for the Court to invoke a narrow exception to the first-to-file rule and find that "compelling circumstances" warrant allowing this duplicitous case to proceed in parallel to the *Brenner* action.  Banegas offers no reason— "compelling" or otherwise—to depart from the strong presumption in favor of the first-to-file rule, and none exists.

---

[1] P&G explained why Banegas' argument failed in both its Motion to Transfer or Stay (ECF No. 17, at 5-6) and its Reply for its Motion for Extension of Time (ECF No. 21, at 3-4).

## I.      BACKGROUND

Banegas cries foul over her own decision to engage in settlement negotiations with P&G before *Brenner* was filed, and she asks this Court to disregard the strong presumption of the first-to-file rule.  Banegas does not allege that P&G acted in bad faith during these ultimately unsuccessful settlement negotiations, but nonetheless accuses P&G of "Gaming the System" in unspecified ways.  (ECF No. 23, at 3.)  But it was Banegas and Banegas alone who controlled the filing date of her own Complaint, and, from the initial demand, through settlement negotiations, and through filing, the *Banegas* suit always trailed the first-filed *Brenner* suit.

Banegas' pre-suit demand, which was P&G's first notification of her potential claims, was served on P&G on April 22, 2016.  (ECF No. 23, at 5.)  In contrast, the plaintiff in the Central District of California action ("Brenner") served P&G with her pre-suit demand on April 15, 2016, exactly one week *before* Banegas did.  (ECF No. 24-1, at 9.)  Counsel for both Banegas and Brenner were aware that P&G had received two demands pertaining to the Pampers Natural Clean wipes, and elected nonetheless to participate in settlement negotiations, which included several rounds of correspondence, multiple telephone conferences, and settlement offers exchanged between the parties.  Although Banegas hints that the settlement negotiations somehow were a ruse to delay her filing, in reality Banegas was always second—second when it came to notifying P&G about her claims, and second when it came to filing her lawsuit.

Nor can Banegas reasonably claim that there is some "gamesmanship" involved in the fact that P&G is moving to stay the *Brenner* case out of deference to the FDA's primary jurisdiction over labeling of regulated cosmetics, including specifically diaper wipes, and to give the Ninth Circuit time to decide related appeals.  Indeed, if *Banegas* were to continue in this Court, P&G would move for an identical stay on primary jurisdiction grounds in this Court, too.

In *Brenner*, P&G's motion to dismiss or stay is currently pending and fully briefed, with the hearing scheduled for September 30. That motion raises the same issues at stake in *Banegas*—*i.e.,* that a reasonable consumer would not be misled by "Natural Clean," that the plaintiff has not established an express warranty, that the doctrine of primary jurisdiction warrants a stay, and that the plaintiff lacks standing to pursue injunctive relief. Banegas would prefer to have two separate courts decide these same issues for the same product, with the potential for conflicting holdings, and with both Banegas and Brenner racing to see who, if either,[2] will be the first to certify a nationwide class. There is no supportable reason for this.

## II.     ANALYSIS

The Eleventh Circuit "require[s] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). This exception must be narrowly applied, and indeed, in *Manuel*—the main case Banegas relies upon—the Eleventh Circuit found that there were no compelling circumstances justifying a departure from the first-to-file rule. *Id.* at 1136 ("We remain unconvinced that compelling circumstances exist to justify . . . an exception to the well-established first-filed rule . . . ."). The Eleventh Circuit applied the first-to-file rule notwithstanding "(1) that Manuel lied to Convergys about his employment with Mellon to surreptitiously win a race to the courthouse, and (2) that Manuel engaged in improper forum shopping and selected a forum with a slight and manufactured connection to the controversy," conduct which the court acknowledged was "not exemplary." *Id.*

---

[2] P&G disputes that class certification is appropriate in either action.

This notwithstanding, Banegas selectively quotes from *Manuel* to pretend that courts find "compelling circumstances" whenever the 28 U.S.C. § 1404(a) factors do not warrant a transfer.[3] (ECF No. 23, at 2.)  This is wrong.  The *Manuel* case and all the cases cited by *Banegas* recognize the same narrow exception to the first to file rule:  a would-be defendant cannot forum shop to a jurisdiction of its choice by filing a ***declaratory judgment action*** that anticipates threatened litigation.   Banegas conflates this narrow exception with ordinary convenience factors of 28 U.S.C. § 1404, which do not create an exception to the rule, and which, if applied in the way Banegas suggests, would create an exception that swallows the rule.  In *Collegiate Licensing Co. v. American Casualty Co. of Reading, Pennsylvania*, the Eleventh Circuit explicitly held "that the 28 U.S.C. § 1404 factors do not justify an exception to the first-filed rule."  713 F.3d 71, 79 (11th Cir. 2013).

The *Manuel* footnote Banegas relies upon was simply noting that some courts decide whether to hear a ***declaratory judgment action*** based on the § 1404(a) factors.  430 F.3d at 1135 & n.1.  And both *Manuel* and *Collegiate Licensing* upheld the first-to-file rule and did not find any compelling circumstances to allow the second-filed case to continue.  *Id.* at 79-80; *Collegiate Licensing*, 713 F.3d at 79.  Indeed, in addition to *Manuel* and *Collegiate Licensing*, several of the cases Banegas tries to rely upon found no exception to the first-to-file rule and ruled in favor of the first-filed action.  *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012).

---

[3] Banegas' assertion that the § 1404 factors would warrant transferring the California case to Florida because Florida is "significantly closer" to Ohio borders on the absurd.  (ECF No. 23, at 7.)  Cincinnati, Ohio is more than 15 ½ hours away from Miami.

Banegas' only cases that find compelling circumstances justifying departure from the first-to-file rule are distinguishable because, in those cases, parties filed declaratory judgment actions in another court in order to have the first-filed case. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 972-73 (3d Cir. 1988); *Chaban Wellness LLC v. Sundesa LLC*, No. 15-cv-21497, 2015 WL 4538804, at \*2-3 (S.D. Fla July 27, 2015); *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 U.S. Dist. LEXIS 60867, at \*2 (D. Kan. Aug. 17, 2007); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1153-54 (S.D.N.Y. 1996); *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F. Supp. 104, 107 (S.D.N.Y. 1996).[4] That narrow (and distinguishable) fact pattern brought those cases under the "anticipatory suit" exception to the first-to-file rule, which applies only "when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum." *Chaban*, 2015 WL 4538804, at \*2 (quoting *Collegiate Licensing*, 713 F.3d at 79).

*Chaban* and its ilk would apply here only if P&G had brought a declaratory judgment action against Banegas. The Court would have understandable skepticism if P&G had done so, and, in that situation, this Court would have had discretion to ignore the first-to-file rule. *See Collegiate Licensing*, 713 F.3d at 79 ("[E]ven if a court finds that a filing is anticipatory, such finding does not automatically compel abandoning the first-filed rule. Rather, the matter remains one of discretion for the trial court."). But of course, that is not the case here. Banegas' real objection is with the fact that Brenner beat her to the courthouse, not any misconduct by P&G.

---

[4] The only other case Banegas cites that does not uphold the first-to-file rule was a case in which the first-filed court transferred the case to the second-filed court because of serious questions about whether the court had jurisdiction over the defendant and because the § 1404 factors supported transfer. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 952-55 (E.D. Va. 1998).

Banegas cannot avoid the reality that Brenner filed her putative class action before Banegas filed hers.

Lastly, Banegas objects because P&G is seeking a stay in the *Brenner* action.  First off, no case has ever held that seeking a stay constitutes a "compelling circumstance" justifying departure from the first-to-file rule.  Moreover, under the primary jurisdiction doctrine, P&G will be moving for a stay of *Banegas*, just like it is for *Brenner*, regardless of whether the action is transferred or remains in this Court.  The primary jurisdiction doctrine "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R. R. Co.*, 352 U.S. 59, 64 (1956).  The doctrine allows "agencies [to] pass in the first instance on technical questions of fact uniquely within the agency's expertise and experience, or in cases whose referral is necessary to secure uniformity and consistency in the regulation of business, such as issues requiring the exercise of administrative discretion." *Axiom Worldwide, Inc. v. Becerra*, No. 8:08-cv-1918, 2009 WL 1347398, at *5 (M.D. Fla. May 13, 2009) (quoting *Columbia Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 520 n.14 (5th Cir. 1981)).[5]  The court will thereby stay further proceedings so as to give the agency a reasonable opportunity to rule.  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

Cases involving the definition of "natural" in cosmetics, such as the Pampers Natural Clean wipes, warrant invoking the primary jurisdiction doctrine, given that "defining what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir.

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2015).  The meaning and use of the term "natural" on FDA-regulated consumer products is currently under active consideration by the FDA.  Indeed in November 2015, the FDA issued a request for comments regarding the use of the term "natural" in connection with food product labeling.  *See Kane v. Chobani, LLC*, 645 F. App'x 593, 594 (9th Cir. 2016) (staying another "natural" case in light of the FDA's request for comments).  *Astiana* explains that "[d]etermining what chemical compounds may be advertised as natural on cosmetic product labels is 'a particularly complicated issue that Congress has committed to' the FDA."  783 F.3d at 761. "Obtaining expert advice from that agency would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA."  *Id*.  Deference to the unique expertise of the FDA in interpreting and applying its own comprehensive regulatory structure favor a stay in *Banegas*, just like in *Brenner*.

Regardless, a request for a stay does not justify departure from the first-to-file rule.  This does not come close to creating the "compelling circumstances" required to depart from the rule. *See Collegiate Licensing*, 713 F.3d at 79; *Manuel*, 430 F.3d at 1135-36.  Even if Banegas thinks that the law may be more favorable to P&G in the Ninth Circuit than in the Eleventh Circuit, no court has ever found that to be a compelling circumstance.  *Kelley v. Kaiser Permanente*, No. 3:13-cv-2120, 2014 WL 2336083, at *5 (D. Or. May 29, 2014) (differences in law did not prevent application of the first-to-file rule when the underlying factual allegations in both actions were virtually identical).  Banegas filed her lawsuit weeks after Brenner files hers, and the first-to-file rule offers her no exception.  *See Strother v. Hylas Yachts, Inc.*, No. 12-cv-80283, 2012 WL 4531357, at *2 (S.D. Fla. Oct. 1, 2012) (holding that, because an action was filed in the District of Massachusetts 58 minutes before a comparable action was filed in the Southern District of Florida, "the Massachusetts action is the first-filed suit and is therefore entitled to a

strong presumption favoring that forum").  Accordingly, the Court should transfer this action to the Central District of California or stay it pending resolution of *Brenner*.

### III.    CONCLUSION

For the reasons above, the Court should transfer this case to the Central District of California or, alternatively, stay this proceeding pending the resolution of *Brenner*.

Dated:  September 19, 2016                              Respectfully submitted,

By:   /s/Douglas C. Dreier_____
Samuel A Danon (Florida Bar No. 892671)
Douglas C. Dreier (Florida Bar No. 104985)
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  sdanon@hunton.com
Email:  ddreier@hunton.com

Ann Marie Mortimer (*pro hac vice)*
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, CA  90071
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020
Email:  amortimer@hunton.com

*Counsel for Defendant The Procter & Gamble Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 19, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which effected service on counsel of record for Plaintiff Angela Banegas.

**Law Office of Joseph Pustizzi, P.A.**
Joseph M. Pustizzi
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Telephone: (954) 241-4244
E-mail: *joseph@pustizzilaw.com*

**The Fraser Law Firm, P.C.**
Michael T. Fraser, Esq.
4120 Douglas Blvd, Suite 306-262
Granite Bay, CA 95746
Telephone: (888) 557-5115
Facsimile: (866) 212-8434
E-mail: *mfraser@thefraserlawfirm.net*

**BLOOD HURST& O'REARDON, LLP**
Timothy G. Blood
Leslie E. Hurst
Jennifer L. McPherson
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619)338-1100
E-mail: *tblood@bholaw.com*
E-mail: *lhurst@bholaw.com*
E-mail: *jmacpherson@bholaw.com*

　　　　　　　　　　　　/s/  Douglas C. Dreier
　　　　　　　　　　　　　Douglas C. Dreier